Our third case for this morning is Stephen Hummel v. St. Joseph County Board of Commissioners and others. Mr. Hull, I'm glad to help you lower the podium or whatever. I think I know where the button is. All right. You've been here before. Here we go. Very good. May it please the court, I'm Kent Hull from South Bend. On behalf of the plaintiffs' appellants, I would like to present two issues or to address two issues. Whether the plaintiffs had standing to raise the issues under which they sued and secondly, whether the district court committed reversal by error in granting summary judgment to the appellees. With respect to the first issue, the plaintiffs in this case were nine individuals altogether. Seven of them are individuals with disabilities who were litigants in the St. Joseph County Superior Court. Two of them were individuals who did not have disabilities, but who were represented by me. So can you explain to me, that's Ramos and Connarecchi, right? No, the two people without disabilities, Ramos has a disability, Connarecchi is one, the other is Bishop. That's correct. So explain to me how their association with you impaired their rights. Your Honor, if you were my client and I was representing you in court and if I encountered, because of my disability, obstacles in the courthouse, I believe that would impair my ability to represent you as my client. But is there any evidence that that ever happened? Well, at the time I was representing them, we did not have restrooms in the St. Joseph County Courthouse that were accessible. Well, I remember that part of it, but I'm just, I'm concerned with the lack of any concrete showing that this was something that affected their right to have the attorney of their choice or that in some way, I mean, I can see, you know, had you been a plaintiff, that would have been a different matter and you could have asserted that, but we need to find some way that their association with you impaired their own rights. That's the associational, it says individuals who are discriminated against because of their known association with an individual with a disability. That's the regulatory language. So what, what allegation is there that would fit that? Well, we have more than an allegation. We have what the district court found in one of the opinions in which it set forth the exact set of violations that existed. But it wasn't making a conclusive finding of fact for the case. The judge was saying, you know, on the limited record in front of him, these kinds of things could be found, but he wasn't, I was disturbed that you didn't go back and present the evidence that was before the district court at that preliminary stage. Your Honor, I would not denigrate the statement of the district judge on the evidence. What he was talking about, we're talking about a hearing that was conducted on a motion for preliminary injunction. I know. I mean, I'm well aware of that. Judge DiGiulio is a fine judge, but your burden is to put evidence on the table. You can't say, I don't read the judge's opinion as a final resolution of any finding of fact that would, that would help you in the way that you seem to think it does. Then Your Honor and I have a different reading of that opinion. Well, that may be. I think we also have a different reading of Rule 56 because Rule 56, in opinions by this court, has been interpreted to say that the non-movement, the plaintiffs were the non-movements, have only one obligation and that is to show evidence or other material which may be turned into evidence at some point. Right. Look, we're all very familiar with Rule 56. Well. And the point is, you need to show the material, whatever it was, a deposition, a document, a photograph of ice on the, you know, entryway, whatever evidence there was that a trier of fact, taking it in the light most favorable to the non-movement, non-movement could use to rule in your favor. That's what has to be there. You don't take the district judge's former opinions for that. That's not what goes to the trier of fact unless you're moving, you know, for judgment as a matter of law. Your Honor, I guess I don't understand your point in the sense that we cited in our opening brief at pages 20 through 23 exactly what the district judge said. We also cited it in the reply brief at pages 7 and 10. And he was describing what he found or what he observed from the testimony that we presented before him. Now he did refer to evidence and to witnesses who testified before him. One was a person in a wheelchair who had been had been summoned as a litigant in the court. They described the barriers they encountered. So that was before the district court. And in my view, under the court's, this court's interpretation, particularly in the Hansen case, which we have cited in our brief, we have shown the material which could be, which could serve to rebut the motion for summary judgment as well as to justify jury trial. Mr. Hall, one of the things that concerns me here is that the subjects on which you're telling us there is a dispute based upon the preliminary injunction opinion seem to be issues as to which the facts changed by the time the defendants moved for summary judgment in that accessible restrooms were made available. And if I understand this correctly, at least two of the courtrooms in the old St. Joe courthouse were made ADA compliant in the interim. That obviously is a, first of all, did that happen? Well, first of all, restrooms were made accessible. It happened, let me just comment, it happened in 2013, just three years after we filed the lawsuit. I understand that completely, but unless you're seeking damages, and I understand your Buckhannon fee point on a catalyst theory, okay, but we can't change that, as you well know. But if the restrooms have been made accessible and two of the courtrooms were also made accessible, is that correct? No, I wouldn't say two of the courtrooms. They're saying in the course of the lawsuit, they said that a basement courtroom would be designated as the courtroom to be used when litigants with disabilities had cases. So that, I mean, I've never been in that courtroom in a case in my life. It wasn't used in the cases that we had. I will tell you that the other thing that is going on, just so the court has a complete picture, is that as I drive past the county city building in South Bend, they have construction underway. Their view appears to be that that construction has nothing to do with this lawsuit, that the spirit of St. Patrick has just descended upon South Bend and we now have an accessible courtroom, as a matter of fact, today in the St. Joe Courthouse, accessible ADA compliant. Well, based upon the representations of the appellees, there is one courtroom in the basement that they've designated as the accessible courtroom. And is it accessible? As I said, I've never been in there. I've never used it. I think it is. I'm not trying to evade your question. I think it probably is. Can I ask you, Mr. Hull, the line of questioning that the colloquy that you just engaged in with Judge Wood, I'd like to sort of follow up on that a little bit. Is there anything in the record that would demonstrate that your clients as litigants were injured because of the lack accommodations for your disability? For my disability? Yes. I can't point to anything specifically, Your Honor. I do think, as I've said, I think there's a good argument to be made that if you're my client, I've got problems, you're affected by that. But let's just take those two. There are two people of the nine. Let's just take them out and look at the seven. The other seven did have disabilities. Would you concede that there doesn't appear to be anything in the record that shows that those two folks as litigants suffered some injury because of your disability? Well, I would say this. There's nothing in the record to show their injury personally. It is my position, again, that because of their association with me, the injuries that I suffered are attributable to them. But was there any impact on them as litigants? If I am impaired... Some adverse impact. Yeah. If I'm impaired... At some level of specificity, if you could. Well, if it's difficult, then let me be very specific. Currently, or excuse me, before the two accessible restrooms were put in, and those two cases happened before the accessible restrooms were put in, there was a practice in St. Joseph Circuit and Superior Court. If I was a lawyer in a case and it came time for me to go to the bathroom, every judge stopped whatever was going on, and I went to the bathroom in the next building. The judges knew about it. It was an informal practice. They apologized to me for it, and they said, we're sorry, we can't get the commissioners to change the building. Is that an impact? I don't know if there was some impact on your clients because of that. I imagine you did a better job when you came back from the bathroom, right? You know, it's kind of embarrassing to have this conversation, but I think you're right. If I was an African-American lawyer, and if I had been told that I had to go to a restroom in another building, I think the court would recognize that my clients could sue the county for that. I'll reserve my time for this. All right. Thank you. It's fine. I believe Mr. Groves is next. If you'd like to raise that, you can press the button and it will go back up again. Which? Kind of down underneath by your right hand, I think. I'm sorry. She'll help you. Maybe it's on the left side. We'll see how many lawyers it takes to raise the voting. I'm not sure I need to fumble with the mechanics. And when you want it to stop, you hit it again. This button right here. It's good enough. Sure. So there it goes. May it please the court. I think my difficulty in this case partially comes from my... And you're representing the county. Yes, James Groves for the county entities. And back to my difficulty, it stems from my sympathy over the years of witnessing Mr. Hull's difficulties in getting through the snow and through the courthouse. But that difficulty has to be overcome by my perspective of what we are here about, and that is some procedural issues that are somewhat sterile but they are the law. So if I could, much of this case has been confusing because of the different plaintiffs that have been added as we've gone along, the elimination of some plaintiffs, and a little bit of puzzlement over what is really trying to be accomplished here. But it seems to me there are issues of issue of association and finally this catalyst issue that I need to address. Well, I don't think you need to address the catalyst issue because Mr. Hull, as I understand his brief, has made it very clear that he is raising it simply for the purpose of preserving it for the tribunal that's able to do something about it, and we certainly will acknowledge that it's been preserved. So the history of the case is two of the individual plaintiffs, Bishop and Tanarecki, had no disabilities and were claiming the injury through association. So I wonder, I mean we have talked about them, but actually it would be more helpful for me if you would address the individual plaintiffs who do unequivocally have disabilities. Why do they have a standing problem? I mean I can understand if we get to summary judgment there's evidence or there isn't evidence, but what's wrong with their standing? The issue with the other defendants, or the other plaintiffs rather, on standing was that Judge DiGiulio, in the denial of the injunctive relief, seemed to leave open the possibility, at least, that the restrooms were inadequate. He didn't say they were, but he left that open as a prima facie element of the plaintiff's complaint. If Mr. Hull had to go to another building, wouldn't that be pretty clear that there's a problem? That is exactly what the Okay. And that's the court's concern. So they got fixed eventually, which you've argued takes care of at least any prospective issue. Correct. Do we have a damages claim? Well, that eliminated the standing because by the time those plaintiffs were added, that problem was fixed. Okay, I guess Mr. Groves, my concern here is with the focus on standing. We're focused primarily, it seems to me, on the Americans with Disabilities Act, right? It's a statutory regime and everybody's talking about standing, but I think we're just talking about whether the plaintiffs have proved an injury, which is part of their cause of action, right? So I'm not going to beg the issue then. Just to throw in my two cents, I mean, that's my sense as well. I mean, as for the disabled plaintiffs, again, putting the associational people to one side for the moment, maybe they've shown a problem, maybe they haven't shown a problem, but that looks an awful lot like a merits issue. And on the merits, what I would like you to focus on is the difficulties they would face if they were called as jurors, which is a civic duty that all citizens have. And we never know, you know, maybe you'll go 10 years and you'll never get a summons, or you might get one next month. But I don't know why that's not at least as concrete as, you know, the bird watchers or some of the other cases where we've certainly found standing, at least. Well, in Judge Posner's decision in the bird watchers case, there was the imminent possibility and the ongoing nature of their going to that preserve to observe. Well, I understand that, and these plaintiffs allege they might, well, they actually allege two kinds of things. They allege involuntary association with the courts, being called as a juror, being sued by someone, being subpoenaed to appear in proceeding. And you never know when that could happen. Then they also allege voluntary actions. We have public and open courts in our country, and some people like to go listen to courts for civic engagement, or because it's interesting, or because they like to come to court. They might want to initiate a lawsuit. So I don't see this at all, for example, like the Lyons case where, you know, you shouldn't be in another chokehold because you should be behaving yourself. But this seems to me is every bit as concrete as the bird watchers. We don't know whether they're going to stay home for a year before they go out again. Well, if I can recall, I think your question went to the standing that those people would have. Yeah, it's just standing, just to kind of get standing off the table. All I can do is rely upon the cases and what Judge DiGiulio observed, and that is there was no imminent possibility. In fact, it was conjecture. But it's not conjecture that you could be called for jury duty. It is speculative. So does any human being have the right to challenge the accessibility of juror facilities? Any human being who has an immediate possibility? You have to wait to have a summons? I don't think that's the law. Well, in order to have standing, there has to be a definitive... There is a definitive thing. You're a citizen of the United States. You're older than the age of 18. You know, you're on the voter rolls, whatever you're on. However, the jury plan works in the Northern District of Indiana. I think, well, we're entirely academic in that sense. In order to have standing... No, we're not. We're talking about a county that was trying to protect the use of an historic building, a beautiful one, but at great cost to citizens with disabilities, right? Correct. You've acknowledged, and the county has been very slow to make this county, this courthouse accessible to people with disabilities. That has had the effect of excluding significant numbers of citizens, including these plaintiffs, from the full ability to participate in those proceedings that any citizen should be able to do. Now, if you're telling us the rule is that nobody can bring a challenge to accessibility of juror facilities until they have actually been summoned, have gone in and seen or tried to get in and seen that they encounter great difficulties, that seems like a very odd way to run a court system. So maybe you should switch to the next. I mean, you're actually running out of time. The law does not provide standing unless there is an immediate situation. Let's talk about the merits of the accessibility of the juror facilities. What does the evidence tell us about that in the different boxes? They are not handicapped or disability accommodated. In any of the courtrooms? Even that basement courtroom? I don't believe they are even in the basement. The testimony and the evidence in this case has been that in the event there was the necessity, if it arose, accommodations were made by the judge in that courtroom to take care of a juror who was handicapped under those disabilities. That is the law, I believe, the law only provides that they be accommodated. And that is the reason why all of the testimony was given by the judges in this case to show the accommodation. On the other hand, I find no evidence, and I recall no evidence at all, in the affidavit of any injury to these named plaintiffs because of the lack of accommodations if arguably that absence existed. So I hope that answers your questions. Okay, I think that we'll have to wrap it up at that. Thank you. And we will give Ms. DeRose maybe three minutes. And you're representing the City, Senator? Yes, I am. May it please the Court, I'm Alan Dean DeRose for the City of South Bend, and I will address the standing issue as well. The City is here solely on the issue of parking spaces around the courthouse and Mr. Hull's allegation that at times during heavy snow that the City removes snow in a way that causes the disabled parking spaces that are reserved for the disabled to become full of snow. I want to say that of course the number of spaces around the courthouses exceeds the limits required by the ADA. So we're just dealing with the snow issue. And as it relates to standing, the standard is, is there a non-negligible, non-theoretical probability of harm? If not, then the plaintiffs don't have standing to raise the issue of snow removal practices against the City. Their designated evidence was one thing, Mr. Hull's statement of what occurs without any particulars, how many inches of snow there has to have been falling, whether this occurs on days that the courthouse would be closed anyway. Can you remind me how much detail there is in the record about the nature of the disability each person has? Yes, both Ms. Wright and Ms. Brandy Comer, the only plaintiffs that were involved in the claim for prospective relief, that's all we're talking about, prospective relief, as to those two plaintiffs, both have MS, and the record contains one statement from Ms. Wright. Ms. Brandy Comer had never been to the court for any hearing, but the statement from Ms. Wright is that I have MS and I tend to slip. I may slip. She may slip on the sidewalk, and the sidewalk is not maintained by the City, it's maintained by the owners of the buildings, none of which is the City. The City does not maintain the courthouse nor the court proceedings, so we're talking solely about parking slots reserved for the handicapped that because of snow removal trucks that have to come through there, snow is placed inside those spaces, but at no time did Mr. Hull say that he had ever been impeded from going to court as a result of the snow, nor had his client who had never been to court for the past three years, and the record, the public record as of last Friday is that there has been no case or no hearing on Ms. Wright's case in the City of South Grand since 2011 that she has attended. She has not attended any case, so we're in the category of hypotheticals as to Ms. Wright, and therefore the judge's decision is absolutely accurate as it concerns that particular issue. What Mr. Hull is really saying is that he's dissatisfied with the way that the City of South Bend removes snow, and that's been addressed in Lujan by Justice Scalia, who said that generalized grievances about the way government does its business do not confer standing. So standing has to be the result of a probable injury likely to occur and which the court can by the district court. The fact is that the only way to remedy snow removal practices by the city would be to treat disabled parkers, those who drive and park, preferentially because the trucks, the snow removal, city removes snow on its streets by trucks. In order to do what Mr. Hull has wants or seems to imply that we do, we would have to hand shovel each disabled handicapped spot. We would have to know whether a disabled person is going to be in court. That's something that would be outside the scope of the court in our opinion. Seriously? Why couldn't a federal court order the city to say, yeah, you've got to keep your handicapped parking spaces as accessible as any other parking spaces are? Because it does. It keeps its hand. What it does right now is keep its parking spots as clean as it can. It can't get close to them without inordinate problems because people are parking there. By hand shoveling? You would have to do it at 5 a.m. in the morning when there's no parking on that street, and by 8 a.m. you may have 10 inches of snow, and you'd have to decide what date you're going to do that and how you're going to do that. In the city, it's already is taxed with miles of areas to shovel, much less having to do it by hand for that particular area on a day when there may be nobody in court. The courts may be closed. There are other ways, and in addition to that, the testimony in the record is that the trial court, the Superior Court, which is in South Bend, both judges have indicated that if anyone has problems with accommodations, that the judges will accommodate them. So if there is a delay because you're having trouble with parking, and by the way, you can park in parking garages that are completely covered, and you maneuver just by going over the sidewalks, so you wouldn't even have to park in a parking space. Are there handicapped spaces in the covered parking garages? Yes, yes, of course, and the ones that are maintained by the city all meet the requirements of the ADA. That was not an issue, but that is available. So the bottom line is that this is really a case about criticizing city snow practices, and the issue with standing is that you a particularized case. You need to be able to focus properly on the remedy. These plaintiff's cases were dismissed without prejudice. If there is a problem in the future that truly does impede their ability, they have a second bite at the apple. This does not foreclose that, and for all those reasons, there's no case against the city. All right, thank you very much, Mr. Rose. Anything further, Mr. Hull? I will try to adjust points very briefly. First of all, with respect to the issue of snow and difficulty getting to the courthouse, the district court permitted me to file my wife's affidavit that of the day that I represented Ms. Matney and Ms. Means. My wife had to push me through the snow. I will file a letter with this court tomorrow when I get back to South Bend, citing where that is in the record. Secondly, is it going to be clear whether it was on the sidewalk maintained by the county or whoever? Yeah, the property owner. The property owner, yeah. Just trying to figure out who was responsible for each part of the trip. I don't know if you've ever been to South Bend. I have been to South Bend. Well, we have the county city building, and that's where the courts and the city are together. They occupy an entire block. If counsel is saying that the property owner is responsible to take care of the property, then I guess it's the county because it's all together. That was my point. I think it's the city and the streets, and in front of that courthouse, I believe it's the county who maintains the ground around the courthouse. All right. With respect to the, let's forget about two people who were not disabled, but with the seven people who were individuals with disabilities, Matney was in a wheelchair, Means was in a wheelchair. And this is all in the record. It is, Your Honor. It's a lot, yeah. Margaret Hummel had, she walked, but she had, how do I want to say this, limited ability to walk. She had mobility limitations. Stephen Hummel had mobility limitations. Crystal Wright has MS, multiple sclerosis. Karen Brandy Comer has MS and is in a wheelchair. Crystal, there was some comment that Crystal Wright has never been to court. Crystal Wright's, I'm the lawyer for everybody, so I know. Crystal Wright's case is under mediation right now. She is under a directive to appear at a mediation, and if the mediation doesn't work out, she'll have to go to court. Finally, I'd like to address, Judge Wood, your earlier questions about the designations in the record. As I read the Celatex trilogies, your opinion in the Badrowski case, as well as the Payne case, which we have cited, what the non-movement must do is to designate, not just evidence, but material which at some point can be made evidence. So I think we've addressed that. I will now conclude my argument. I thank the court for its attention. All right. Thank you very much. Thanks to all counsel. We'll take the case under advisement.